**JAVERBAUM WURGAFT HICKS**
**KAHN WIKSTROM & SININS, P.C.**
By: Drake P. Bearden, Jr., Esquire
Attorney PA I.D. 308035
1000 Haddonfield-Berlin Road, Suite 203
Voorhees, NJ 08043
Telephone: (856) 596-4100 x 3050
Facsimile: (856) 702-6640
Email: dbearden@lawjw.com
Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANICA MOORE, | : |
| *Plaintiff*, | : |
| | : CIVIL ACTION NO. |
| v. | : |
| PHILADELPHIA FIGHT, | : |
| *Defendant.* | : **COMPLAINT WITH JURY DEMAND** |

Plaintiff, Danica Moore, residing in the Commonwealth of Pennsylvania, by way of Complaint against Defendant, says:

### INTRODUCTION

Plaintiff brings this suit against Defendant Philadelphia Fight (hereinafter referred to as "Defendant") alleging that Defendant discriminated against her because of her race and retaliated against her for engaging in protected conduct in violation of Title VII of the 1964 Civil Rights Act ("Title VII") and the Philadelphia Fair Practices Ordinance ("PFPO").

### PARTIES

1.  Plaintiff Danica Moore was, at all times relevant herein, a Black woman residing in the Commonwealth of Pennsylvania and a former employee of Defendant.

2.  Defendant was, at all times relevant herein, a corporation operating in the State of Pennsylvania, with its office at 1233 Locust Street, Philadelphia, PA.

## JURISDICTION

3. This action is brought pursuant to Title VII and the PFPO. Jurisdiction is founded on 28 U.S.C. §§1331 and 1343(3) and the aforementioned statutory provisions.

4. Jurisdiction lies under any state laws claims based on the principles of supplemental jurisdiction as codified at 28 U.S.C. §1367.

5. The amount in controversy exclusive of interests and costs exceeds the minimum required amount of $75,000.

## VENUE

6. The claims herein arose within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and involved a defendant who resides within the jurisdictional limits. Venue is accordingly invoked according to the dictates of 28 U.S.C. §1391(b) and (c).

7. In December 2017, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination and retaliation against Defendant. Plaintiff filed an updated complaint on February 13, 2018.

8. Plaintiff dual filed that complaint with the Pennsylvania Human Relations Commission.

9. On July 21, 2023, The EEOC issued Plaintiff a Right to Sue Letter.

10. Plaintiff's state claims were transferred to the Philadelphia Commission on Human Relations ("PCHR") and that matter has not been resolved.

## PLAINTIFF'S ALLEGATIONS

11. Plaintiff began working for Defendant in or around 2011 or 2012.

12. Defendant terminated Plaintiff on February 1, 2018.

13. At the time of her termination, Plaintiff worked as the Program Manager for Defendant's Jonathan Lax Center ("JLC") Women's Program.

14. At all times relevant herein, the Chief Executive Officer ("CEO") of Defendant was Jane Shull, who is a White woman.

15. In or around 2016, an organization was formed called the Black and Brown Worker's Cooperative ("BBWC"), to combat racism at organizations in Philadelphia.

16. In or around 2016, employees of Defendant who were members of the BBWC filed a discrimination complaint against Defendant with the PCHR, which resulted in a report filed by the PCHR.

17. Upon information and belief, PCHR's report found Defendant's employees engaged in racist practices and policies, and recommended Defendant's staff and leadership receive training on racism.

18. After this complaint and investigation, Shull for the most part, stopped speaking to Plaintiff, and Plaintiff was told Shull was upset because she thought Plaintiff was a member of the BBWC.

19. Prior to the incident that occurred in 2017, Plaintiff consistently received positive reviews for her job performance, frequently receiving ratings of "Excellent" and "Superior" from her supervisor Elizabeth Schmidt, the Director of the JLC, who is a White woman.

20. On September 14, 2017, a Nurse Manager, Julie Fort, who is a White woman, began screaming in front of staff and clients that Plaintiff was harassing her.

21. Fort engaged in this conduct on two separate occasions and her conduct was so outrageous she prevented Plaintiff from performing her job.

22. Plaintiff was not in fact harassing Fort or doing anything untoward to Fort.

23. Other Black employees complained in the past that Fort harassed them.

24. Plaintiff believed Fort engaged in this conduct because Fort, and other White employees, did not like Plaintiff because they thought she was involved with the BBWC.

25. On September 20, 2017, Plaintiff filed a discrimination complaint with the Human Resources Officer, Barry Robinson, alleging Fort harassed her because she is a Black woman.

26. On or around October 30, 2017, another Black employee, Dannette Burry, filed a complaint against Fort because she heard her screaming about Plaintiff and was bothered by Fort's conduct.

27. In October, after Plaintiff filed her complaint, Defendant began to try to force Plaintiff to transfer to a Cross-Agency Women's Training Specialist ("CAWTS") position.

28. In Plaintiff's position as a Program Manager, Plaintiff saw patients in the JLC, conducted individual and group therapy sessions and worked with team managers.

29. In the CAWTS position, Plaintiff could not work in the JLC and would not see patients, which was a large part of her current job.

30. Plaintiff believed the transfer was retaliation for Plaintiff filing her discrimination complaint.

31. Defendant conducted an investigation into Plaintiff's complaint on or around November 10, 2017.

32. Defendant's investigation determined Fort acted unprofessionally toward Plaintiff, but concluded Fort's conduct was not discriminatory.

33. Shortly after those findings, Defendant and its employees began retaliating against Plaintiff even more.

34. On or around December 8, 2017, Defendant held a meeting with Plaintiff wherein Shull informed Plaintiff she could no longer meet with clients at the JLC.

35. Shull told Plaintiff she had to transfer to the CAWTS position.

36. On December 11, 2017, Schmidt sent an email to Plaintiff apologizing for not standing up for Plaintiff during the December 8, 2017 meeting. Schmidt also stated the following in her email: "Even though you told me to stop trying to be a go-between, and to stop encouraging you to accept racist micro-aggressions for the sake of program harmony and getting things done for clients, I am going to do it now for your sake, because I know that you need a job too."

37. On December 12, 2017, Plaintiff sent an email to Shull, Robinson and Schmidt wherein she stated she believed she was being racially targeted, harassed and retaliated against for filing her discrimination complaint against Fort.

38. Plaintiff complained in the email that she believed the transfer was retaliation for her complaint.

39. On December 20, 2017, Plaintiff was required to meet with Defendant's General Counsel and Chief Legal Officer, D. Deone Powell, and Robinson.

40. During the meeting, Plaintiff told Powell and Robinson she did not feel comfortable meeting alone with two men and asked if a woman could be present.

41. Robinson denied Plaintiff's request.

42. Powell told Plaintiff she had until January 5, 2018 to decide if she wanted to accept the new position, otherwise she would be terminated with 90-days' pay.

43. On or around January 1, 2018, Plaintiff sent an email to Powell asking if she could have another meeting regarding the specifics of her new position.

44. On or around January 2, 2018, Plaintiff sent Powell another email asking about specifics of the position and asking to schedule a meeting on January 5, 2018, to discuss the position.

45. Powell replied to Plaintiff that they were not having another meeting and she had until noon on January 5, 2018, to accept the position.

46. Plaintiff emailed Powell back and accepted the position because she felt she would otherwise be terminated.

47. After Plaintiff accepted the position, Defendant terminated Plaintiff on or around February 1, 2018.

48. Defendant failed to tell Plaintiff why she was terminated or who made the determination to fire Plaintiff.

49. After her termination, Plaintiff updated her complaint with the EEOC and PCHR.

50. The PCHR conducted an investigation into Plaintiff's complaint.

51. Several Black employees and/or former employees corroborated Plaintiff's claim that discrimination against Black women existed at Defendant.

52. According to the PCHR report, former employee Elisabeth Long stated there is "pervasive racism" at Defendant and Black employees are surveilled and disciplined for conduct that White employees engage in but are not disciplined for.

53. According to the PCHR report, former employee Jordan Twine, who is a Black woman, stated another supervisor, Jennifer Jones, who is a Black woman and sided with Defendant, referred to her as an "angry Black woman" and claimed she did not smile enough.

54. According to the PCHR report, former employee Karla Schmidt, who is a Black woman, stated Defendant was an "insane asylum."

55. According to the PCHR report, Karla Schmidt stated she was told Shull would never hire a Black CFO because Shull believed a Black person would steal, and when Schmidt confronted Shull about the statement Shull did not deny saying that.

56. According to the PCHR report, Karla Schmidt stated in her position she had access to personnel records and she noticed Black employees left Defendant at a much higher rate than non-Black employees and there were very few Black employees in management positions.

57. According to the PCHR report, Burry stated after Plaintiff was fired, Elizabeth Schmidt told Burry if she talked about Plaintiff's experience, Shull would fire her.

58. According to the PCHR report, Calenthia Dowdy stated there was an "attitude against Black women" at Defendant.

59. The PCHR report stated, "It was determined that more likely than not, the actions alleged in the complaint occurred due to discrimination."

60. To Plaintiff's knowledge, other Black female employees, LaQuita Washington and Devra Stroud-Banks, were also fired by Defendant for complaining about discrimination.

## LEGAL AVERMENTS

61. Plaintiff is a member of a protected class under Title VII and the PFPO as a Black woman and an individual who engaged in protected conduct.

62. Plaintiff engaged in protected conduct when she complained about race discrimination against Fort, and then when she complained about discrimination, harassment and retaliation in her December 2018 and subsequent correspondences.

63. Subsequent to Plaintiff engaging in protected conduct, Plaintiff was subjected to adverse employment actions that included, but were not limited to, being forced to transfer to an

7

unwanted position and being terminated from her job with Defendant.

64. A determinative or motivating factor in the adverse employment actions Defendant took against Plaintiff was Plaintiff's membership in the protected categories as outlined in this Complaint.

65. Punitive damages are warranted in this matter because members of upper management were both directly involved in the unlawful conduct and were willfully indifferent to the unlawful conduct.

66. As a result of the unlawful conduct outlined above, Plaintiff has been forced to suffer economic and non-economic harm.

## COUNT I
## RACIAL DISCRIMINATION UNDER THE PFPO

67. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

68. Plaintiff was subjected to discrimination based on her race which had an adverse effect on her employment.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just.

## COUNT II
## RETALIATION UNDER THE PFPO

69. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

70. Plaintiff engaged in protected activity under PFPO as articulated at length in this Complaint.

71. Subsequent to Plaintiff engaging in the protected activity outlined above, Defendant subjected her to adverse employment actions as outlined above.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just.

## COUNT III
## DISCRIMINATION BASED ON RACE UNDER TITLE VII

72. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

73. Plaintiff was subjected to discrimination based on race that had an adverse effect on her employment.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just.

## COUNT IV
## RETALIATION UNDER TITLE VII

74. Plaintiff hereby repeats and realleges the preceding paragraphs as though fully set forth herein.

75. Plaintiff engaged in protected activity under Title VII as articulated at length in this Complaint.

76. Subsequent to Plaintiff engaging in the protected activity outlined above, Defendant subjected her to adverse employment actions as outlined above.

**WHEREFORE**, Plaintiff demands judgment against the Defendants jointly, severally and in the alternative, together with compensatory damages, including emotional pain and suffering, punitive damages, interest, cost of suit, attorneys' fees, enhanced attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, equitable instatement or promotion, and any other relief the Court deems equitable and just.

77. Plaintiff requests the following equitable remedies and relief in this matter:

   a. Plaintiff requests a declaration by this Court that the practices contested herein violate Federal law as set forth herein.

   b. Plaintiff requests that this Court order the Defendant to cease and desist all conduct inconsistent with the claims made herein going forward, both as to the specific Plaintiff and as to all other individuals similarly situated.

   c. Plaintiff requests, that in the event that equitable reinstatement and/or equitable back pay and equitable front pay is ordered to the Plaintiff, that all lost wages, benefits, fringe benefits and other remuneration is also equitably restored to the Plaintiff.

   d. Plaintiff requests that the Court order the Defendant to alter its files so as to expunge any reference to which the Court finds violates the statutes implicated herein.

  e. Plaintiff requests that the Court do such other equity as is reasonable, appropriate and just.

           **JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, PC**

          By: */s/ Drake P. Bearden, Jr.*
            Drake P. Bearden, Jr.
            Attorneys for Plaintiff

Dated:

## DEMAND TO PRESERVE EVIDENCE

1. All Defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, to any defenses to same, and pertaining to any party, including, but not limited to, electronic data storage, closed circuit TV footages, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages and any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

2. Failure to do so will result in separate claims for spoliation of evidence and/or for appropriate adverse inferences.

JAVERBAUM WURGAFT HICKS KAHN
WIKSTROM & SININS, P.C.

*s/ Drake P. Bearden, Jr.*
Drake P. Bearden Jr.
Attorney for Plaintiff

Dated: August 16, 2023

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**JAVERBAUM WURGAFT HICKS
KAHN WIKSTROM & SININS, P.C.**


*s/ Drake P. Bearden, Jr.*
Drake P. Bearden Jr.



Dated:  August 16, 2023